GEORGE PETRILLI, Respondent, v. SWIFT & COM-
COMPANY, Appellant.*

In the Kansas City Court of Appeals, April 7, 1924.

1. NEW TRIAL: Failure of Trial Court to Specify Grounds upon Which New Trial was Granted Does not Invalidate its Action with Reference Thereto. Failure of trial court to specify grounds upon which a new trial was granted does not invalidate its action in granting the same, although section 1454, Revised Statutes 1919, requires trial court to specify the grounds, and in reviewing the action of the trial court in reference thereto, the appellate court will consider all grounds specified in motion for new trial.

2. ———: Appeal and Error: Rule Stated as to When Appellate Court will not Disturb Order Granting New Trial. Where motion for new

Petrilli v. Swift & Co.

trial was sustained, with no reason given by the trial court for so doing, and one of the points made by the motion is that the verdict is against the weight of the evidence, the appellate court will not disturb the trial court's action unless there is substantial evidence to justify a result contrary to the verdict, or the evidence of the party obtaining the new trial conclusively shows that no verdict in his favor could stand.

3. **APPEAL AND ERROR:** Omission of Testimony from Abstract of Appellant Held Supplied by Respondent's Abstract, and Record Sufficient for Review in Appellate Court. On appeal by defendant, where plaintiff did not dispute the statement of defendant that plaintiff solely relied for recovery upon the overloading of a truck which he was pulling when injured, and plaintiff's abstract showed the only cause of his injury was his effort to pull the heavily loaded truck, though he had alleged that insufficient lighting also caused the same, consequently notwithstanding omissions in the defendant's abstract in reference to certain testimony, the appellate court was justified in holding that plaintiff's cause of action was based solely upon the theory that he injured himself in the effort to pull the truck he knew to be overloaded, when ordered to do so.

4. **MASTER AND SERVANT:** Assumption of Risk: Servant Injured by Overexertion of Strength Held to Have Assumed the Risk. Where plaintiff, in obedience to an order of his foreman, attempted to pull a truck heavily loaded with meats, up a slight incline of five feet in length and rising one foot, and when plaintiff had reached the top and was standing on the level, endeavoring to pull the same up the last five inches of the incline, he strained and ruptured himself by overexerting his strength to keep the truck from rolling backward, *held* plaintiff assumed the risk because no emergency required him to use sudden and unexpected force or strain since he could have allowed the truck to go back down the incline without injury to himself.

---

*Headnotes 1. Appeal and Error, 4 C. J., Section 2556; New Trial, 29 Cyc., p. 1027; 2. Appeal and Error, 4 C. J., Section 2874; 3. Appeal and Error, 4 C. J., Section 2089 (Anno); 4. Master and Servant, 26 Cyc., p. 1203.

Appeal from Circuit Court of Buchanan County.—*Hon. L. A. Vories*, Judge.

REVERSED AND REMANDED (*with directions*).

*Robert A. Brown* and *Richard L. Douglas* for appellant.

*Shull & Shull* for respondent.

TRIMBLE, P. J.—This is an action for damages by an employee in defendant's meat packing plant at St. Joseph. There was a verdict for defendant, and plaintiff filed motion for new trial, which the court sustained without assigning a reason therefor. Thereupon the defendant appealed.

The petition alleged, in substance, that it was plaintiff's duty as an employee in defendant's plant to pull truck loads of meat from one place to another; that it was defendant's duty to furnish help to plaintiff, sufficient to render it reasonably safe; that on the day he was injured, plaintiff was engaged in pulling a truck loaded with meats up a certain incline; that a reasonable load for him to pull up said incline was about 400 pounds; that plaintiff and other workmen were then under a foreman, and a very large load, to-wit, about 1000 pounds, was placed on plaintiff's truck; that said load was too heavy for plaintiff to pull with reasonable safety without help or aid; that plaintiff complained to said foreman of the excessive load and asked for help to aid him in trucking said load up the incline; that the foreman ignored his request and ordered plaintiff to truck same alone and without help; that thereupon plaintiff, being under orders, proceeded to truck said load alone up said incline; that said truck and said load was so heavy that it was dangerous for one man to truck alone, and defendant was negligent in ordering plaintiff, through its foreman, to do so.

The petition further alleged that plaintiff had no daylight but had to rely on small electric lights that hung near and over the runway or passage he had to pull his truck over, and unless said runway was well lighted, the same was not reasonably safe, but was unsafe and dangerous, especially when a truck was heavily loaded.

That on the day plaintiff was hurt, said runway was not well lighted, and because thereof was unsafe and dangerous, and said foreman negligently ordered plaintiff to use same in moving said heavily loaded truck thereon; and because of its poorly lighted condition, plaintiff was unable to use same with reasonable safety, and was liable to injury from the great weight of his load and from having no help and from said unlighted condition.

That defendant carelessly ordered plaintiff to pull his truck, heavily loaded as aforesaid, over the runway and up the incline without reasonable help and while said incline or runway was not reasonably well lighted nor so lighted as to be reasonably safe for the purpose of moving such a heavy load thereon by plaintiff unaided; that defendant carelessly ordered plaintiff to pull his truck without furnishing him help as requested.

That on June 12, 1922, plaintiff was, under the direction of the foreman, pulling said truck, heavily loaded as aforesaid, up said incline without help and while said incline was insufficiently lighted as aforesaid, and under the dangerous situation aforesaid, when being unable to manage said truck and to pull same up said incline in the unlighted and dark condition thereof and for want of sufficient help, said truck ''became unmanageable when at or near the top of said incline and ran backward and became so that plaintiff was unable to manage same and in his effort to handle and manage same, plaintiff received sprains and injuries that caused him to have what is commonly called and known as double rupture.''

The answer, after a general denial, pleaded that plaintiff, by accepting employment, assumed the risk ordinarily incident to his employment and that plaintiff's injuries, if any, resulted from the risks and dangers ordinarily incident to his employment.

Plaintiff's evidence is that he was working under the direction of a boss who had authority to, and did, discharge men when they did not obey his orders; that

plaintiff was engaged in pulling meat on a truck from the "hogroom" to the "refrigerator room" in said plant; that before he did this work they had two men to a truck, but that he did the work two persons had done before; that the average load for one man was 700 pounds but when the load was extra heavy, or over 700 pounds, they would use two men; that on the way between the two rooms and near the refrigerator room was an incline about five feet in length and one foot in height at the upper end, and from the top of the incline to the doors of the refrigerator room, a distance of 20 feet, it was level; that plaintiff was pulling a truck behind him loaded with 1300 pounds of meat, the truck and load weighing 1400 pounds.

Plaintiff's evidence is further that when he relinquished his empty truck and took charge of the loaded one, he remarked to the boss that the load was extra heavy for him. The boss, however, ordered him to proceed, and, in response to his request for help, told him he could do it himself or quit.

Plaintiff testified that he started toward the incline as fast as he could and went up it as rapidly as possible, but the momentum he thus gained, ceased when the truck was about five inches from the top of the incline and the truck came to a standstill; plaintiff was then standing on the level and the truck began to return or go back down the incline; that he tried to pull it up and hold the truck from going down, and while doing so, he felt something in his abdomen give way and he then suffered a rupture. The truck then went on back down the incline.

At the close of plaintiff's case in chief, and again at the close of the entire case, the defendant demurred but was overruled. The jury, as stated, returned a verdict for defendant but the court set it aside and granted plaintiff a new trial, giving no reason therefor.

It is well settled that although the statute (section 1454, R. S. 1919) requires the trial court to specify the

grounds on which a new trial is granted, its action in granting same without stating the grounds thereof, will not be thereby invalidated; and the appellate court, in reviewing such action, will consider any or all of the grounds specified in the motion for new trial. [Lindsay v. Shaner, 291 Mo. 297, 300.]

Where the motion for new trial has been sustained, with no reason given by the court for so doing, and one of the points made by the motion for new trial is that the verdict is against the weight of the evidence, then the appellate court will not disturb the trial court's action unless there is no substantial evidence to justify a result contrary to the verdict, or unless the evidence of the party obtaining the new trial conclusively shows that no verdict in his favor could be allowed to stand. [Leavel v. Johnston, 209 Mo. App. 197, 200; King v. Mann, 208 Mo. App. 642.]

Plaintiff's motion for new trial stated, as one of its grounds, that the verdict was against the weight of the evidence, and, therefore, the chief question before us is whether a verdict in plaintiff's favor could be allowed to stand.

Now, although the petition alleges that the runway was insufficiently lighted, yet there is no statement therein showing any connection whatever between a lack of light and plaintiff's ability or inability to pull the load up the incline, or between the matter of light and plaintiff's injury. The charge is that the truck was overloaded and plaintiff, though requesting help, was ordered to pull it up the incline without help and that he obeyed orders and undertook to pull the heavily loaded truck up the incline but was not able to do so for want of sufficient and reasonable help, and, in his efforts to do so and to keep it from running back, plaintiff was ruptured. No charge is made that the incline was slippery defective, or out of repair in any way, or that plaintiff fell, or anything untoward happened to him, because of any defect in the incline or lack of light thereon.

And in plaintiff's evidence, disclosed by the record, it is shown that he had reached the upper leved and was standing thereon when the truck behind him got to a point about five inches from the top of the incline, beyond which he could pull it no further, and in his efforts to pull it up, or to keep it from going back down the incline, he strained himself and was ruptured.

Appellant's abstract of the record does show upon its face many omissions of testimony and that not all of same was brought up. And, were it not for the matters to be presently stated, we might perhaps say that on account of such omissions we could not tell but that his injuries may have been caused by some defect or lack of light and not solely from his attempt to pull a load that was too heavy whereby he strained and ruptured himself.

But appellant's statement that this last was the sole reliance of plaintiff to support his case with nothing else entering into it, is not disputed by respondent. Indeed, respondent's additional abstract setting forth the evidence upon which plaintiff relies to make out his case, shows the only cause of plaintiff's rupture to be his effort to pull the heavily loaded truck up the remaining five inches of the incline and to keep it from going back down the same. In neither abstract is there evidence of anything else having anything to do with it. And in plaintiff's instructions embodying his cause of action this was submitted and treated as the sole cause of the rupture, and nothing, in the way of a lack of light or of any condition of the runway, was mentioned or referred to. Consequently, notwithstanding the omissions in the testimony brought up by appellant's record, we are fully justified in treating the case as one in which the cause of action relied upon is bottomed solely upon the theory that plaintiff strained and ruptured himself in the effort to pull a truck he knew to be overloaded, when ordered to do so.

It will be observed that plaintiff himself had reached the top of the incline and was standing on the level en-

deavoring to pull the truck up the last five inches of the incline, and that he strained and ruptured himself in the attempt. The truck was not above him nor in danger of falling upon him, nor was there anything in the situation which rendered it urgently necessary that he should at all events prevent the truck from going back down the incline. He was not suddenly placed in a situation where he must exert himself to the utmost and at all hazards or else be injured otherwise. He was not in an emergency subjected to a sudden and unexpected force or strain coming upon him which he must bear lest some other accident or tragedy befall. He was under no obligation to pull beyond his strength, but, at the limit thereof, or before, could have allowed the truck to go back down the incline without injury to himself or anyone else. His injury did not arise because he fell, or slipped, or met with any untoward happening. It arose simply because he overexerted himself. The authorities hold that, under such circumstances, the servant is the judge of his own strength, and not being under any necessity to exert himself beyond it, he cannot recover damages for injuries arising merely through lifting or overexertion. The danger of strain or rupture from overexertion under such circumstances is held to be one of the risks incident to his employment which he impliedly assumes.

In Haviland v. Kansas City, etc., R. Co., 172 Mo. 106, the plaintiff was sprained in pushing a steel rail up an incline, his contention being that too little help was furnished. He was nonsuited but afterward the trial court awarded him a new trial. On appeal, the Supreme Court reinstated the nonsuit, holding that he was not entitled to recover. It is true, plaintiff in that case was not ordered to do the work as was plaintiff in the case at bar, but the Supreme Court (at p. 117) quoted the holding in the case of Worlds v. Railroad, 25 S. E. 646, where such order was given, to-wit: "1. Where one enters the service of another, he impliedly assumes the usual and ordinary risks incident to the employment

about which he is engaged, and, in discharging the duties which he has undertaken to perform, he is bound to take notice of the ordinary and familiar laws of nature applicable to the subject to which his employment relates; and if he fails to do this, and in consequence is injured the injury is attributable to the risks of the employment, and the master is not liable.

"2. Where an employee of a railroad company, in the discharge of his duties, is directed to lift and carry an ordinary object, like a cross-tie, he is bound to take notice that it is heavy, and that a certain amount of physical strength will be required to accomplish the task; and if he misconceives the amount of physical strength to be exerted, and overstrains himself in lifting the tie, and is thereby injured, the master is not liable. The fact that he was acting under the orders of a superior at the time does not alter the question, even though he might have had reason to believe that disobedience of the order would result in his dismissal." The Supreme Court, in the Haviland case, also quoted from the case of Ferguson v. Phoenix Cotton Mills, 61 S. W. 53, in the Supreme Court of Tennessee, where the plaintiff was moving cotton from one vat to another on a truck when one of the wheels of the truck fell into a hole in the floor, and the servant, in attempting to lift the wheel out, strained his back. It was held that he could not recover and that he could not "hold the master liable for overexerting and straining himself. He is the best judge of his own lifting capacity, and the risk is upon him not to overstrain it."

In Sandy Valley, etc., R. Co. v. Tackitt, 181 S. W. 349, 350, a case wherein a plaintiff was ordered to operate a lifting jack alone without sufficient help being furnished, the court held it was "simply a case where the servant with knowledge of the fact that he was not equal to the task, overstrained himself. It is the general rule that a servant is the best judge of his own physical strength, and the duty is on him not to overtax it.

Therefore, if he misconceives the amount of his strength required to accomplish the task and overstrains himself, the master is not liable." The court distinguished the case from several others cited, saying the plaintiff "was not placed in a position where he was required to sustain an unexpected weight" and that plaintiff could have "released this hold at any time without danger." [See, also, Roberts v. Indianapolis St. Ry. Co., 64 N. E. 2117; Stenvog v. Minnesota Transfer Co., 121 N. W. 903; Ehrenberger v. Chicago, etc., R. Co., 166 N. W. 735; International, etc., R. Co. v. Figures, 89 S. W. 780.]

Appellant lays much stress upon the fact that plaintiff had to pull the truck up the slight incline of five feet in length and rising one foot; but under the circumstances hereinbefore mentioned and to which attention has been called, the situation is the same as if he had been ruptured while attempting to pull the truck on the level, or as if he had been injured while attempting to lift a stone as was the case in Leitner v. Grieb, 104 Mo. App. 173, in which recovery was denied.

The cases of Bowman v. Kansas City Electric Light Co., 213 S. W. 161, and of Tull v. Kansas City, etc., R. Co., 216 S. W. 572, are not in point. In the Bowman case, the plaintiff was not injured through his own overexertion, but because the other end of the pole fell, causing the butt end of the pole to fall upon and injure him. He had been ordered to do the work in the way it was being done and, despite his objection, the help theretofore furnished had been withdrawn. In the Tull case, plaintiff was ordered to carry a heavy tie up a steep, slippery bank. He slipped and *fell* and was thereby injured. There was no element of overexertion in it nor was it overexertion that injured him as in the case at bar. The same is true of the other cases cited by plaintiff.

As the verdict of the jury was for the defendant and as no verdict in plaintiff's favor on the cause of action relied upon, could be allowed to stand, it follows that the court erred in granting a new trial. Where-

fore, the judgment is reversed and the cause remanded with directions to reinstate the verdict and render judgment thereon for defendant. All concur.